IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JILL RUNYAN,                                    08-CV-1458-BR

           Plaintiff,                           OPINION AND ORDER

v.

FARMERS INSURANCE
EXCHANGE,

           Defendant.


GLENN N. SOLOMAN
Attorney at Law
2125 S.W. Fourth Avenue, Suite 600
Portland, OR  97201
(503) 241-3508

           Attorney for Plaintiff

CHRIS KITCHEL
TIMOTHY W. SNIDER
Stoel Rives, LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR 97204
(503) 294-9429

           Attorneys for Defendant


1   -   OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Farmers Insurance Exchange's Motion (#7) to Compel Arbitration and to Dismiss or Stay Proceedings.  For the reasons that follow, the Court **GRANTS** Farmers' Motion and **DISMISSES** this matter **without prejudice**.


<u>BACKGROUND</u>

The following facts are undisputed or, if disputed, are viewed in the light most favorable to Plaintiff Jill Runyan.

Runyan is a resident of Oregon who worked at a Farmers agency from February 2005 to October 21, 2007.  Farmers is a California corporation doing business in Oregon.

Beginning in June 2006, Runyan held the position of Reserve District Manager (RDM), which is a District Manager in training. Runyan was the only female RDM in Oregon.

When Runyan became an RDM, she was required to sign a District Manager's Reserve Appointment Agreement.  The Agreement provides in pertinent part:

> Whereas, as a licensed agent of the Companies, District Manager has employed Employee to assist in servicing the District Manager's business; and

> Whereas, District Manager desires that Employee be licensed as an insurance representative and appointed by the Companies subject to Employee qualifying for an

2  -  OPINION AND ORDER

insurance agent's license.

Now, therefore, the parties hereto agree:

1. The Companies agree to appoint Employee as its licensed insurance representative under the terms and conditions of this Agreement, and District Manager and Employee agree that Employee will not be licensed or act in any other capacity and will service only the policyholders of the Companies and the clients of District Manager.

2. The appointment is an accommodation to District Manager for Employee to act as an assistant District Manager. The appointment shall impose no obligation upon the Companies, and Employee shall not be entitled to any rights, benefits, privileges, or compensation extended to District Manager. Employee, in accepting the appointment, accepts and agrees that Employee is not guaranteed appointment as an agent or as a district manager of the Companies under any other agreement.

3. District Manager represents and agrees that Employee will assist District Manager in all duties associated with the normal operation of the District, including, but not limited to training and recruiting agents, planning and implementing sales promotions, and assisting with administrative responsibilities.

4. Employee is not an employee of the Companies for any purpose. District Manager shall be solely responsible for the training, supervision, and compensation of Employee.

5. Employee agrees to act strictly as an agent and employee of District Manager.

* * *

9. I, Employee, acknowledge that this

3  -  OPINION AND ORDER

Agreement constitutes my entire agreement. No one has made any representations or promises to me that are not expressed in this Agreement, and there are no understandings or agreements of any kind other than those set forth in this Agreement.

No change, alteration or modification of this Agreement may be made unless it is in writing and signed by the Employee, District Manager and the Companies.

I have read and understand the provisions of this Agreement and agree to the foregoing provisions. I have been given the opportunity to review this Agreement with independent legal counsel. I voluntarily and freely enter into this Agreement and wish to do business with the District Manager on the terms and conditions as set forth herein.

In addition, the Agreement includes an arbitration clause, which provides in pertinent part:

Any dispute arising pursuant to this Agreement shall be submitted to final and binding arbitration at the written request of any party . . . . The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. Sections 1-16, and judgment upon the award rendered may be entered by any court having jurisdiction over the matter arbitrated . . . . Each party will bear, equally, the cost of any arbitration fees, and each party will bear its own costs and expenses, including attorneys' fees. The parties agree that no arbitrator, under this provision, may award emotional distress, punitive or exemplary damages and that such award shall be deemed void and not binding upon any party.

During Runyan's time as an RDM, less qualified male RDMs were promoted to district manager, a position that can result in a significant pay increase. Runyan also was required to meet

4    -    OPINION AND ORDER

performance standards that were not imposed on similarly situated males.  In addition, crude sex humor and stereotyping were prevalent at the agency where Runyan worked.

On October 3, 2007, Runyan filed an administrative discrimination charge alleging sex discrimination against Farmers and faxed a copy of the charge to Farmers.

On November 17, 2008, Runyan filed a Complaint in Yamhill County Circuit Court.[1]  In her Complaint, she alleges claims for wrongful discharge and retaliation based on sex discrimination.

On December 16, 2008, Farmers removed the matter to this Court on the basis of federal-question jurisdiction.

On February 26, 2009, Farmers filed a Motion to Compel Arbitration.  On April 27, 2009, the Court relieved Farmers from filing a Reply pending its review of Runyan's Response, and, in light of the Court's disposition on Farmers' Motion to Compel Arbitration, the Court now concludes a Reply is not necessary.


## **STANDARDS**

The Federal Arbitration Act (FAA) was enacted to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  The FAA

---

[1] The caption on Runyan's Complaint reflects it was filed in Hood River County Circuit Court.  In its Notice of Removal, however, Farmers asserts, and Runyan does not dispute, that Runyan's Complaint was actually filed in Yamhill County Circuit Court.

provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Id.* *See also* 9 U.S.C. § 2. "[T]he standard for demonstrating arbitrability is not high," and "such agreements are to be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). The Court "must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." *Id.* Accordingly, the court's task is to "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation omitted). *See also Simula*, 175 F.3d at 720. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

"[A]rbitration is a matter of contract," and courts must "place arbitration agreements on equal footing with other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Accordingly, when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2. *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996); *Ferguson v. Countrywide Cred. Indus., Inc.*, 298 F.3d 778, 782 (9th Cir.

2002).   Arbitration agreements are subject to all defenses to enforcement that apply to contracts generally.  *See*  9 U.S.C. § 2.  To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Federal courts should apply the law of the forum state to determine whether an arbitration agreement is enforceable. *Ticknor v. Choice Hotels, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001).  *See also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

Thus, Oregon law applies here, and this Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001).  If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  *Id.*  If "there is relevant precedent from the state's intermediate appellate court, [however,] the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would

not follow it." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009)(quoting *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007))(quotation marks omitted).

If the court determines the matter is subject to an arbitration clause, it may either stay the matter pending arbitration or dismiss the matter. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.3d 635, 638 (9th Cir. 1988).

## DISCUSSION

Farmers seeks to enforce the arbitration clause in the Agreement and, accordingly, requests the Court to dismiss this matter on the ground that the arbitration clause is valid and encompasses both of Runyan's claims. Runyan does not dispute the arbitration clause encompasses her claims, but argues the arbitration clause is invalid on the ground that it is unconscionable.

## I.    Unauthenticated deposition transcript.

In her Response to Farmers' Motion, Runyan submitted an unauthenticated April 15, 2009, deposition transcript of Douglass Williams. The Court may only consider admissible evidence that is submitted by a party in support of a pleading. *See generally* Fed. R. Civ. P. 56(e). *See also Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Authentication is a condition precedent to admissibility. *Id.* A deposition or an extract

8   -   OPINION AND ORDER

therefrom is authenticated when it identifies the names of the
deponent and the action and includes the reporter's certification
that the deposition is a true record of the testimony of the
deponent. *Id. See also* Fed. R. Evid. 901(b); Fed. R. Civ. P.
56(e), 30(f)(1).  "It is insufficient for a party to submit,
without more, an affidavit from her counsel identifying the names
of the deponent, the reporter, and the action and stating that
the deposition is a 'true and correct copy.'"  *Id*.  In addition,
the Court notes the material in Williams's deposition addresses
Runyan's substantive claims rather than the alleged
unconscionability of the Agreement.

Accordingly, the Court will not consider Williams's
deposition transcript.

**II.  Validity of the arbitration clause.**

Runyan argues the arbitration clause is unconscionable
because (1) it was part of the Agreement she was required to sign
as a condition of employment, (2) it precludes a statutory remedy
that would otherwise be available to her, and (3) its cost-
sharing provision is overly burdensome.

"[U]nconscionability is a generally applicable contract
defense that may render an agreement to arbitrate unenforceable."
*Chalk*, 560 F.3d at 1092 (citing *Shroyer v. New Cingular Wireless
Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).  Whether a
contract is unconscionable is a "question of law that must be

determined based on the facts in existence at the time the contract was made." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007).

> It is not surprising that attempts to describe unconscionability lack precision; the concept is designed to cover a wide variety of situations.  The primary focus, however, appears to be relatively clear: substantial disparity in bargaining power combined with terms that are unreasonably favorable to a party with the greater power may result in a contract or contractual provision being unconscionable.

*Carey v. Lincoln Loan Co.*, 203 Or. App. 399, 422 (2005).  "The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Motsinger*, 211 Or. App. at 614 (citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)).

"In Oregon, the test for unconscionability has two components--procedural and substantive." *Id*. at 614 (citing *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 556 (2007)).  "Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract." *Id*. (citation omitted; emphasis in original).  "Although both forms of unconscionability are relevant, . . . only substantive unconscionability is absolutely necessary." *Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez*, 210 Or. App. at 567)(quotation marks omitted).

10   -  OPINION AND ORDER

**A.    Procedural unconscionability.**

Runyan asserts she was required to sign the Agreement
containing the arbitration clause as a condition of employment,
and, therefore, the arbitration clause is procedurally
unconscionable.

As noted, "[p]rocedural unconscionability refers to the
*conditions* of contract formation." *Motsinger*, 211 Or. App. at
614.  The inquiry into procedural unconscionability focuses in
part on the factor of oppression.  *Id*.

> Oppression arises when there is inequality in
> bargaining power between the parties to a
> contract, resulting in no real opportunity to
> negotiate the terms of the contract and the
> absence of meaningful choice.

*Id*.  "[A] contract of adhesion--an agreement presented on a take-
it-or-leave-it basis--reflects unequal bargaining power. . . ."
*Chalk*, 560 F.3d at 1094 (citing *Motsinger*, 211 Or. App. at 615).

The record reflects Runyan was required to sign the
Agreement as a condition of employment, and, therefore,
the Agreement, including the arbitration clause, is an adhesion
contract.  Accordingly, the contract is the product of unequal
bargaining power between the parties.  In *Chalk*, however, the
Ninth Circuit concluded "the take-it-or-leave-it nature of [a
contract] is insufficient to render it unenforceable" on account
of procedural unconscionability when the arbitration clause "was
not hidden or disguised and where the plaintiff was given time to

11    -   OPINION AND ORDER

read the documents before assenting to their terms."  560 F.3d at
1094 (citation omitted).

Runyan does not assert and the record does not reflect that
the arbitration clause was hidden, disguised, or that she was not
given time to read its terms.  In addition, Runyan does not
allege the presence of any other fact that tends to show
procedural unconscionability; for example, compulsion or high-
pressure tactics.  *See Motsinger*, 211 Or. App. at 614 (evidence
of such factors shows unequal bargaining power).  Accordingly,
although the adhesion nature of the Agreement "reflects unequal
bargaining power," it is not sufficient to render it
unenforceable.  *Chalk*, 560 F.3d at 1094 (citation omitted).

In any event, even though "procedural unconscionability is
relevant" under Oregon law, "the emphasis is clearly on
substantive unconscionability."  *Vasquez-Lopez*, 210 Or. App. at
569.  *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.
20, 33 (1991).  Accordingly, the Court must determine whether the
arbitration clause is substantively unconscionable.

**B.    Substantive unconscionability.**

As noted, Runyan contends the arbitration clause is
substantively unconscionable because (1) it precludes a
statutory remedy for emotional distress that Runyan would
otherwise have available to her and (2) the cost-sharing
provision is overly burdensome.

The nature of an adhesion agreement reflects "an underlying inequality in the parties' ability to bargain." *Chalk*, 560 F.3d at 1094. The court must consider whether that disparity in bargaining power "'is combined with terms that are unreasonably favorable to the party with the greater power'" to determine whether the Agreement is substantively unconscionable. *Id*. (quoting *Motsinger*, 211 Or. App. at 617).

### 1.    Available remedies.

Runyan contends the preclusion of her statutory remedy for emotional distress in the arbitration clause is substantively unconscionable and, therefore, the arbitration clause is invalid.

In her Complaint, Runyan requests damages for infliction of emotional distress on the basis of sex discrimination. As noted, the arbitration clause provides: "The parties agree that no arbitrator, under this provision, may award emotional distress . . . damages and that such award shall be deemed void and not binding upon any party." Pursuant to 42 U.S.C. § 1981a(b), however, a plaintiff may recover damages for emotional distress under Title VII, 42 U.S.C. § 2000e, *et seq.*, if the plaintiff shows intentional discrimination on the part of the defendant.

In *Chalk*, the Ninth Circuit discussed arbitration-clause waivers in the context of the right to bring a class

13   -  OPINION AND ORDER

action.  *Id*. at 1095.  The Ninth Circuit, relying on *Vasquez-Lopez*, concluded a waiver was substantively unconscionable when it was "entirely unilateral in effect" and, therefore, "prevent[ed] individuals from vindicating their rights" because small recoveries that are available outside of the class-action context "do not provide the incentive to bring a solo action." *Id*.  *See also Vasquez-Lopez*, 210 Or. App. at 570 (class actions allow vindication of claims that would individually be "not worth the candle")(quotation omitted).

Although the provision prohibiting an award of emotional-distress damages applies equally to both parties on its face, the provision, in effect, applies only to Runyan because there is not a scenario in which Farmers, a corporate entity, would request damages for emotional distress.  The prohibition on emotional-distress damages, however, does not prevent Runyan from vindicating her rights; *i.e.*, she is not prevented from seeking remedies such as economic damages under the arbitration clause, and, thus, her incentive to bring an action is not impaired.  *See Chalk*, 560 F.3d at 1095.

In addition, "individuals may contractually agree to arbitrate employment disputes and thereby waive the statutory rights to which they would otherwise be entitled[, and] remedies and procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature."

*Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1999, 1303-05 (9th Cir. 1994).  A Title VII plaintiff, however, "may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Id*. at 1305.

In *Prudential*, the Ninth Circuit concluded the plaintiffs, who were sales representatives for the insurance company, did not knowingly agree to arbitrate their Title VII claims because the provisions at issue did not refer to employment disputes.  *Id*.  In addition, the *Prudential* plaintiffs were not told they were signing an arbitration agreement, were not given an opportunity to read the forms, and were not given copies of the agreement they signed.  *Id*. at 1301.

Here, in contrast, the Agreement is an employment contract that provides all disputes arising pursuant to the Agreement are to be arbitrated.  Runyan does not assert she was not told the Agreement included an arbitration clause or that she was not given an opportunity to read the forms.  In addition, the record does not reflect Runyan unknowingly agreed to submit to arbitration all disputes arising out of the Agreement, including Title VII claims.  Accordingly, Runyan has failed to satisfy her burden.

On this record, the Court concludes Runyan has not shown the preclusion of a statutory remedy for emotional distress

renders the arbitration clause invalid as substantively
unconscionable.

### 2.    Cost-sharing provision.

Runyan also contends the cost-sharing provision of the
arbitration clause is unconscionable because it is prohibitively
expensive, and, therefore, the arbitration clause is invalid.

The party seeking "to invalidate an arbitration
agreement on the ground that arbitration would be prohibitively
expensive . . . bears the burden of showing the likelihood of
incurring such costs." *Green Tree Fin. Corp.-Ala v. Randolph*,
531 U.S. 79, 92 (2000).  "An arbitration agreement is
unenforceable under the FAA if it denies the litigant the
opportunity to vindicate his or her rights in the arbitral
forum." *Vasquez*, 210 Or. App. at 573 (citing *Green Tree*, 531
U.S. at 90).  The existence of large arbitration costs may result
in the denial of a plaintiff's opportunity to vindicate her
rights.  *Id.*

> Denial of access to an arbitral forum occurs
> when the cost of arbitration is large in
> absolute terms, but also, comparatively, when
> that cost is significantly larger than the
> cost of a trial. . . .

*Id.* at 574.

A record that is silent with respect to arbitration
costs renders the amount of costs "too speculative to justify the

16  -  OPINION AND ORDER

invalidation of [an] arbitration agreement." *Id.* (quoting *Green Tree*, 531 U.S. at 91). For example, when the plaintiff does not offer any evidence of the "likely costs of arbitration or the potential impact of those costs on her," a court cannot adequately assess the costs the plaintiff will bear and the "deterrent effect, if any, those costs would have on [a] plaintiff's ability to bring an action to vindicate her rights." *Motsinger*, 211 Or. App. at 618. *See also Vasquez-Lopez*, 210 Or. App. at 574. Accordingly, an arbitration clause is not rendered substantively unconscionable because of the mere possibility that the plaintiff would have to bear a prohibitive amount of costs. *Id*.

As noted, the arbitration clause provides: "Each party will bear, equally, the cost of any arbitration fees, and each party will bear its own costs and expenses, including attorneys' fees." Runyan submitted an Affidavit in which she states if she were to arbitrate this matter in the manner specified by the arbitration clause, the filing fee for her case would be $6,000 and the service fee would be $2,500. The record does not include any basis for this cost estimate or the potential impact of those costs on Runyan other than a conclusory statement that these costs, together with an undetermined share of the arbitrator's fee, would result in Runyan's inability to pursue her claims against Farmers. *See Vasquez-Lopez*, 210 Or. App. at 573

(plaintiffs alleged the arbitration cost amounted to six months of their savings).  In addition, Runyan has not provided the Court with any evidence as to whether these costs are "significantly larger than the cost of a trial," *id.* at 574, and the Court questions the reliability of such a premise.  Runyan, therefore, has failed to satisfy her burden to show the likelihood of incurring arbitration costs sufficiently onerous to deter her from pursuing her claims.

Accordingly, the Court finds on this record that Runyan has not shown the cost-sharing provision of the arbitration clause is substantively unconscionable.

In summary, the Court concludes Runyan has not established the arbitration clause is invalid, and, therefore, the Court grants Farmers' Motion to Compel Arbitration.

## II.  Dismissal pending arbitration.

As noted, the Court has determined the arbitration clause is valid and enforceable.  Accordingly, Farmers requests the Court to dismiss this matter pending arbitration.  Runyan is silent as to this issue.

On this record, the Court concludes it is appropriate to dismiss this matter without prejudice pending arbitration.

## CONCLUSION

For these reasons, the Court **GRANTS** Farmers' Motion (#7) to

18   -  OPINION AND ORDER

Compel Arbitration and to Dismiss or Stay Proceedings and **DISMISSES** this matter **without prejudice**.

IT IS SO ORDERED.

DATED this 23rd day of June, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

19  -  OPINION AND ORDER